## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **VOLANDO AVIATION, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **22-cv-00130** |
| | § | |
| **SUMMIT SKY ADVISORY, LLC,** | § | |
| **Defendant.** | § | |
| | § | |

---

## COMPLAINT

---

Plaintiff Volando Aviation, LLC files this Original Complaint with Declaratory Relief Requested against Defendant Summit Sky Advisory, LLC, and would respectfully show the Court as follows:

### PARTIES

1.     Plaintiff Volando Aviation, LLC (herein, "Volando" or "Purchaser") is a Delaware limited liability company.  Plaintiff is a citizen of the State of Florida and no other state.

2.     Defendant Summit Sky Advisory, LLC (herein, "Summit" or "Seller") is a limited liability company with its principal office and conducting business at 1315 Nueces Street, Austin, Texas 78701. On information and belief, Defendant's members are citizens of the State of Texas and no other state.  Summons may be served at Summit's registered office address - 3888 Oak Lawn Avenue, Suite 920, Dallas, Texas 75219 – pursuant to Federal Rule of Civil Procedure 4(h)(1).

**COMPLAINT**                                                                                                      **PAGE 1**

## JURISDICTION & VENUE

3.      The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties—Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.  Plaintiff is a citizen of the State of Florida and no other state. Defendant is a citizen of the State of Texas and no other state.

4.      The Court has personal jurisdiction over Defendant because, among other reasons, Summit is a limited liability company organized and existing under the laws of the State of Texas.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL BACKGROUND

6.      Summit owns a PIAGGIO AERO INDUSTRIES SPA P180 aircraft (herein, the "Aircraft").

7.      On or about January 19, 2022, Volando and Summit entered into an Aircraft Purchase Agreement (herein, the "Agreement") for the Aircraft. A true and correct copy of the Agreement is attached hereto as Exhibit 1 and incorporated fully herein by reference.

8.      Under the Agreement, among other salient terms, Volando provided a fully refundable security deposit (herein, the "Security Deposit") (here, $125,000.00) to McAfee & Taft with Attorney Erin M. Van Laanen serving as the escrow company agent. *See* Agmt. § SECURITY DEPOSIT.

9.      In return, Summit agreed, among other salient terms, to allow Volando the opportunity to conduct a Preliminary Survey (herein, the "Preliminary Survey") of the Aircraft on January 19, 2022:

1. **PRELIMINARY SURVEY OF AIRCRAFT:**

PURCHASER shall have the right to conduct a Preliminary Survey of AIRCRAFT on January 19th, 2022. This Preliminary Survey of AIRCRAFT shall include a test flight from Key West (KEWY) to Key Largo (07FA). The PURCHASER shall be responsible for all fees associated with the test flight including fuel, pilot fee, landing fees, and any other mutually agreed upon items. Following the completion of the Preliminary Survey of AIRCRAFT, PURCHASER shall advise in writing within ONE (1) business day whether to continue on to the Survey of AIRCRAFT. In the event PURCHASER does not wish to proceed with the purchase of the AIRCRAFT following the Preliminary Survey of AIRCRAFT, PURCHASER shall reject the AIRCRAFT as described below in Section 7. and the SECURITY DEPOSIT shall be returned to the depositor of funds less all of the Escrow cancellation fees.

*See* Agmt. § 1.

10.     Following the Preliminary Survey, the Agreement provided for a Survey of the Aircraft to take place (herein, the "Survey") to begin within <u>five business days</u> of the Security Deposit being paid:

2. **SURVEY OF AIRCRAFT:**

A Survey of AIRCRAFT must begin within FIVE (5) business days of the receipt of SECURITY DEPOSIT. This Survey of AIRCRAFT shall include engine borescopes, engine runs, avionics checks, systems checks, windshield and cabin windows inspection, fuel leak inspection, logbook review, visual inspection and test flight not to exceed ONE (1) flight hour. The test flight during the Preliminary Survey shall count towards this Survey item. This Survey shall take place at Horseshoe Bay Jet Center in Horseshoe Bay, Texas (KDZB). This Survey shall be conducted by PURCHASER'S representative. Survey of AIRCRAFT shall be limited to TWO (2) business days.

*See* Agmt. § 2. Here, the fifth business day would be January 26, 2022. All costs associated with the Survey were allocated to Volando.

11.     Importantly, Volando still had the right/ability to reject the Aircraft through two business days after completion of the Survey for any reason and was entitled to a full refund of the security deposit, less any fees associated with cancellation and the survey:

7. **ACCEPTANCE/REJECTION OF AIRCRAFT**:

Following the completion of the Survey of AIRCRAFT, PURCHASER and/or the Survey location, shall provide SELLER a list of airworthiness discrepancies found, if any. If no airworthiness discrepancis are found, PURCHASER shall either accept or reject the AIRCRAFT in writing within TWO (2) business days of the completion of the Survey of AIRCRAFT. Within TWO (2) business days of receiving the list of airworthiness discrepancies, SELLER shall determine whether to:

    (i) Open a work order at the Survey location to repair the airworthiness discrepancies at SELLER'S sole expense.

    (ii) Open a work order at a repair facility of SELLER'S choice to repair the airworthiness discrepancies at SELLER'S sole expense. SELLER shall be responsible for all relocation expenses from the Survey location to the repair facility location.

    (iii)Reduce the SALES PRICE of the AIRCRAFT in the amount of the estimated repair for the items, or reduce the SALES PRICE by a mutually agreeable amount between PURCHASER and SELLER. SELLER shall have the right to obtain an additional TWO (2) repair quotes for the items.

Given the SELLER'S decision, the PURCHASER shall either accept or reject the AIRCRAFT in writing within TWO (2) business days of receiving the SELLER'S response to the airworthiness items found, if any. The PURCHASER shall provide the SELLER and ESCROW COMPANY with a copy of this acceptance or rejection of the AIRCRAFT. If the AIRCRAFT is accepted, the SECURITY DEPOSIT shall be immediately considered non-refundable and applied towards the SALES PRICE of the AIRCRAFT. If the AIRCRAFT is rejected for any reason whatsoever, the SECURITY DEPOSIT shall be immediately returned to the depositor of funds less all of the Escrow cancellation fees, test flight expenses and any unpaid relocation expenses to and from the Survey location.

*See* Agmt. § 7.

12. Here the Security Deposit was paid on January 19, 2022.

13. The Preliminary Survey of the Aircraft took place as agreed on January 19, 2022.

14. The following day (January 20, 2022), Volando's representative (Tom Lelyo) spoke with Summit's representative (Phillip Dollar) regarding the next steps. During that call Volando advised that it was not proceeding to the full Survey of the Aircraft. Specifically, Volando explained that it was not possible to get the appropriate inspector/technician out to Horseshoe Bay Airport within the allotted time period and that it was thus declining to proceed with the Survey. However, as Volando was still interested in potentially purchasing the Aircraft—if it could have more time to complete the Survey or have the Survey take place at a different airport where a Piaggio-trained technician would be available—Mr. Lelyo advised that Volando was going to leave the Security Deposit with the Escrow Agent through Wednesday, January 26th (*i.e.*, the deadline to commence the Survey) in case Volando was able to resolve the logistics issue of getting a qualified technician to the Horseshoe Bay Airport. Mr. Dollar indicated during the call that

Summit's owner (Coleman Jamison) didn't need to sell the Aircraft and wouldn't be interested in extending the timeline to complete the Survey but that he would pass along the message. Volando (again, through Mr. Lelyo) acknowledged that Volando understood that the Aircraft was no longer under contract but that its ownership group was still working through logistics to see if they could somehow accomplish the Survey in the required timeframe.[1]

15.     Later that night Mr. Lelyo further updated Mr. Dollar that he was still working with Volando's ownership group to see if they could proceed.  Mr. Dollar did not respond.

16.     Having heard nothing further from Mr. Dollar, on January 24, 2022, Mr. Lelyo reached out to Mr. Dollar again—this time via email—reiterating what they had discussed on January 20th and confirming that Volando understood that the Aircraft was "no longer considered under contract" but that he was still working on the logistics to see if they could reengage on the deal. In that email he also reiterated that Volando was leaving the Security Deposit in escrow through Wednesday (*i.e.* January 26th, the deadline to *commence* the Survey) because he was hopeful they could move forward.

17.     On January 26, 2022, Mr. Lelyo contacted the Escrow Agent to advise her that the transaction was not moving forward and to refund the Security Deposit to Volando.

18.     In response, the Escrow Agent advised that she had received a Notice of Default from the Seller via email.[2]  Based on the Notice of Default, the Escrow Agent advised that she

---

[1] Volando concedes that the January 20, 2022 communication occurred orally between the parties whereas the Agreement stated that Volando was to advise in writing whether it was going to continue to the Survey step of the pre-purchase diligence.  However, there is no dispute that on January 20th received *actual* notice from Volando that it was not proceeding forward with the Survey during the telephone call between Messrs. Dollar and Lelyo.

[2] Strangely Summit did not email the Notice of Default (dated January 24, 2022) to Volando but instead sent it to Volando solely by certified mail.  That letter did not even arrive at Volando's office until January 31, 2022, which was after the January 27 deadline to close the transaction that

couldn't release the Security Deposit.  A true and correct copy of the Notice of Default is attached hereto as Exhibit 2 and incorporated fully herein by reference.

19.     The Notice of Default alleged that Volando was in default of the Agreement for two reasons: (i) for failing to advise in writing that it was not proceeding with the Survey within one business day of the Preliminary Survey and (ii) for not beginning the Survey within five business days of the security deposit being received.  The Notice of Default then went on to demand that Volando close on the transaction by January 27, 2022 (a date unilaterally set in the Notice of Default) or that Summit would exercise its rights and remedies under the Agreement (i.e., keep the Security Deposit).  *See* Exhibit 2, Notice of Default.

20.     Importantly, while the Notice of Default was dated January 24, 202, Summit did not email or fax the Notice of Default on that day.  Instead, Summit sent the Notice of Default by United States mail, certified.  The letter was not actually received by Volando until January 31, 2022.  Defendant's nefarious motives to steal the Security Deposit are clear by the fact that Summit solely transmitted the Notice of Default to Volando via certified mail—virtually guaranteeing that said notice will not even be received until the supposed opportunity to cure deadline has passed.

21.     Regardless, the Notice of Default is facially incorrect, misleading, reflects a breach of the parties' Agreement, and was wholly ineffective for several reasons, including without limitation:

> i.    Summit had *actual* notice on January 20, 2022 (one business day after the Preliminary Survey) that Volando was not proceeding with the Survey at that time;

---

Summit unilaterally set in the Notice of Default.  Ostensibly, if Summit had wanted Volando to actually receive the letter in a timely fashion, it would have copied Volando on the email where it forwarded the correspondence to the Escrow Agent.

ii.   Volando's deadline to commence the survey was on January 26th—a party cannot be in default on January 24th for not doing an act that is not due until two days later on January 26th;

iii.   The Notice of Default is not effective upon dispatch but rather upon receipt (Agmt. § 16 (Purchaser Fails));

iv.   The Notice of Default ignored that Volando was entitled to three (3) business days' notice to cure any alleged default; and

v.   Even if Volando's January 20th communication was somehow lacking because it was not in writing, Volando still had the opportunity to reject the Aircraft for any reason whatsoever two business days after the Survey was completed (or if the Survey was not completed, that failure to complete the Survey is not injurious to Summit, as it would have only benefited Volando to have additional information regarding the Aircraft's condition), and Volando would still be entitled to reject the Aircraft within two business days of the deadline to have completed the Survey (*i.e.*, completion of the Survey was due on January 29 and two business days thereafter would be February 1, 2022).

But of course, it was clear that Summit did not want Volando to actually have the opportunity to cure any alleged default because Summit sent the letter solely by certified mail (from Texas to Delaware) virtually ensuring that Volando would not have an opportunity to cure.

22.   Further evidencing that Summit was fully aware that Volando advised it was not moving forward with the Agreement on January 20th is that (i) Summit never moved the Aircraft to the Horseshoe Bay Airport for the Survey to take place, (ii) from January 20th forward neither Mr. Dollar, nor Mr. Jameson, nor any other Summit affiliated personnel ever made a single inquiry or communication to anyone with Volando about the logistics of moving the Aircraft to Horseshoe Bay Airport or otherwise making it available for the Survey. Instead, Summit decided to play a game of GOTCHA: stay silent after Volando gave Summit actual notice that it was not moving forward, send an alleged Notice of Default via certified mail across the country knowing it would not be received in time to cure the alleged defaults, and attempt to impose unilateral changes to the parties' Agreement regarding the timing of the Survey and any closing.

---

**COMPLAINT**                                                                                  **PAGE 7**

23.     On January 27, Volando's Florida counsel responded to the Notice of Default (as Volando received the courtesy copy from the Escrow Agent on January 26th).  A true and correct copy of counsel's Demand for Return of Security Deposit is attached hereto as <u>Exhibit 3</u>.  Therein Volando's counsel reiterated that the Agreement had been terminated on January 20th, identified that Summit's Notice of Default was ineffective, and reiterated that Volando was electing to terminate the Agreement.  As an aside, while Volando terminated by giving actual notice on January 20th, the deadline to complete the Survey was on January 27th (*see* Agmt. § 2) and the Agreement provided that Volando had two business days thereafter to terminate for any reason (*id.* § 7).  Volando counsel's letter was thus transmitted and received by Summit on January 27th— within Volando's deadline to terminate the Agreement.  Counsel's letter also demanded that Summit authorize the release of the Security Deposit. To date, Summit has failed and refused to do so.

<u>**CAUSES OF ACTION**</u>

**COUNT 1 – DECLARATORY RELIEF**

24.     Volando incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

25.     Volando brings this suit for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

26.     A case or actual controversy within this Court's jurisdiction exists between Volando and Summit relating to their relative rights and obligations under the Agreement, including the cancelled purchase of the Aircraft.

27.     According to the terms of the Agreement, the Security Deposit was fully refundable. The Agreement further provided that Volando had the option to discontinue the

purchase following the Preliminary Survey and after the Survey. In the event of a cancelled purchase, Summit was responsible for returning the Security Deposit to Volando, less the Escrow cancellation fees. *See* Agmt. § 1.

28.     Volando cancelled the Aircraft purchase and so advised Summit.

29.     To date, Summit has failed to fully perform its obligations under the Agreement and has instead unilaterally attempted to re-write the Agreement through the Notice of Default and falsely claim that Volando is in default and that Summit is entitled to the Security Deposit.

30.     Accordingly, a conflict exists between Volando and Summit as to whether or not the Aircraft purchase was cancelled and consequently whether Summit was obligated to refund the Security Deposit, less the Escrow cancellation fees.

31.     Because of Summit's failure to acknowledge the cancelled Aircraft purchase and release the Security Deposit as required by the Agreement, Volando seeks a declaration from this Court that under the terms of the Agreement, Volando cancelled the Aircraft purchase. Such declaration would terminate the uncertainty and controversy giving rise to this proceeding, allow the Escrow Agent to disburse the Security Deposit, and otherwise resolve Summit's demand for Volando to complete the aircraft purchase of $1,900,000 without the bargained-for-benefit of the Survey and ability to object to the condition of the Aircraft lest Volando lose the Security Deposit.

32.     Volando further seeks a declaration from this Court that under the terms of the Agreement it is entitled to the return of the Security Deposit less the Escrow cancellation fees. Such declaration would terminate the uncertainty and controversy giving rise to this proceeding.

33.     Volando seeks, and is entitled to recover, its costs and reasonable attorneys' fees as are equitable and just in bringing this cause of action for Declaratory Relief.

## COUNT 2 – BREACH OF CONTRACT

34.     Volando incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

35.     Volando and Summit were parties to a valid and enforceable contract, here the Agreement.

36.     Per the Agreement, Volando had the option to cancel the Aircraft purchase following the Preliminary Survey. *See* Agmt. § 1.

37.     Volando notified Summit that it was cancelling the Aircraft purchase within one business day of the Preliminary Survey. This was reiterated twice in writing.

38.     Moreover, Volando notified Summit that it was cancelling the Aircraft Purchase within the deadline to do under Section 7 of the Agreement based on the deadline to commence and complete the Survey.

39.     After Volando cancelled the Aircraft purchase, Summit materially breached the Agreement by, among other reasons, failing to authorize the Escrow Agent to refund the Security Deposit, less the Escrow cancellation fees when due or upon demand. *See* Agmt. § 1.  Summit also breached the parties' Agreement by sending the Notice of Default when there was no default and demanding performance inconsistent with the deadlines set forth in the Agreement.  *Id*. § 7, 9-10, 12 & 16.

40.     Volando performed, tendered performance of, or was excused from performing its obligations under the Agreement. *See* Agmt. § 1.

41.     As a direct and proximate result of Summit's breach of the Agreement, Volando has sustained economic damages in excess of the jurisdictional minimum of this Court plus pre-judgment interest from the date of this filing.

## ATTORNEYS' FEES AND COSTS

42.    Volando incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

43.    As a result of Summit's actions, it was necessary for Volando to employ the services of the undersigned counsel to institute and prosecute this action. Pursuant to Texas Civil Practice and Remedies Code chapters 37 and 38 and other statutory provisions, Volando is entitled to recover all reasonable and necessary attorneys' fees and costs incurred in prosecuting this lawsuit.

## CONDITIONS PRECEDENT

44.    All conditions precedent to Volando's recovery have been performed or have occurred as required by applicable law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Volando Aviation, LLC respectfully requests that Defendant Summit Sky Advisory, LLC be cited to appear and answer herein and that upon final hearing of this case, Plaintiff have judgement against Defendant, and be awarded the following:

1) a declaration from the Court that Volando timely cancelled the Aircraft purchase;

2) a declaration from the Court that Volando is entitled to the return of the Security Deposit less the Escrow cancellation fees;

3) any and all actual and/or economic damages resulting from the conduct complained of herein, as set forth above;

4) equitable relief to the extent permitted by law;

5) reasonable attorneys' fees, at all levels of the legal process;

6) any and all recoverable or taxable costs to the extent permitted by law;

7) pre-judgment and post-judgment interest thereon at the highest rate per annum allowed by law and statute;

8) for all costs of court; and

9) for such other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

DATE: February 4, 2022

Respectfully submitted,

*/s/ Meagan Martin Powers*
Meagan Martin Powers
State Bar No. 24050997
Katherine M. Anand
State Bar No. 24050223
**MARTIN POWERS & COUNSEL, PLLC**
600 East John Carpenter Fwy, Suite 234
Irving, Texas 75062
Telephone: (214) 612-6474
Facsimile: (214) 247-1155
meagan@martinpowers.com
katie@martinpowers.com

**COUNSEL FOR PLAINTIFF**